UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STARLENA WILKERSON,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
    Defendant.

No. 1:12-cv-00868

**ORDER**

This matter is before the Court on the Report and Recommendation of Magistrate Judge Stephanie K. Bowman (doc. 15), to which Plaintiff has objected (doc. 16). The Magistrate Judge has concluded that the finding of "non-disability" should be affirmed as it is supported by substantial evidence in the administrative record. For the reasons that follow, we accept the recommendation of the Magistrate Judge that the decision to deny benefits be affirmed.

In brief, Plaintiff filed applications for disability insurance benefits and disabled widow's benefits in August 2008, alleging, in both, a disability onset date of April 12, 2008 (Tr. 13, 56-59, 60-63). In an opinion entered March 17, 2011, Administrative Law Judge ("ALJ") Amelia G. Lombardo determined that Plaintiff had the severe impairments of residual effects of

1

right knee surgery, cervical degenerative disc disease, obesity and carpal tunnel syndrome (Tr. 16). However, the ALJ also determined that Plaintiff was not disabled under the Social Security Act as none of these impairments, alone or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1, and that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work and was capable of performing her past relevant work as a collections clerk and as a secretary (Tr. 16-27). The Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final administrative decision of the Commissioner (Tr. 1-4).

Plaintiff argued on appeal to this Court that the ALJ erred when she failed to properly evaluate the opinions of four treating sources, Drs. Joseph Uzpen, B.K. Reddy, Britton Wells, and Esam Alkhawaga, and when she instead assigned "great weight" to the opinion of non-examining consultant, Dr. William Bolz, but then omitted certain limitations found by him from Plaintiff's RFC (see doc. 8). The Magistrate Judge has rejected both of Plaintiff's assignments of error.

As to the first error, the Magistrate Judge found that the ALJ provided the requisite "good reasons" for rejecting the opinions of her treating physicians (doc. 15 at 5-19). See 20 C.F.R. § 404.1527(c)(2); Soc. Sec. Ruling 96-2p, 1996 WL 374188,

2

at *5 (July 2, 1996). For example, Plaintiff had taken issue with the ALJ's "not sufficiently specific" (see doc. 8 at 12) conclusion that the assessment of Dr. Uzpen, her primary care physician at the Wright-Patterson Air Force Base, was "unsupported by objective findings in the preponderance of the record" (Tr. 25). The Magistrate Judge observed, however, as did the ALJ, that the opinions given by him were contained in letters written to the human resources department for civilian personnel for the purpose of qualifying Plaintiff as an approved leave recipient (Tr. 374-76). Indeed, the language used by Dr. Uzpen was expressly requested by Plaintiff and stated only that he "strongly supported the effort to allow [Plaintiff] as much off duty time as possible" (Tr. 371, 372, 373). More importantly, these very short letters rendered no assessment of whether Plaintiff was functionally capable of working her current job or any other. Further, two of the three letters pertained to periods of time that predated her alleged onset date of April 12, 2008 (Tr. 371, 372); and while the third, dated April 17, 2008, falls after, the time period to which Dr. Uzpan referred began the previous March 10 ended the following June 9, less than two months later (Tr. 373). (See doc. 15 at 8.) Noting that the Sixth Circuit does not require a "particular number of sentences or specific analysis to satisfy the 'good reasons' standard," the Magistrate Judge concluded

3

that the ALJ's determination referenced "both the lack of supportability of [Dr. Uzpen's] opinion in context, and the lack of objective findings [on his part]" (doc. 15 at 9). In support, she cited Allen v. Comm'r of Soc. Sec., in which our parent circuit affirmed the district court's decision upholding the Commissioner's denial of benefits, concluding that an ALJ's single sentence rejection of a treating physician's opinion satisfies the "good reasons" requirement if it makes appropriate reference to the factors set forth in 20 C.F.R. § 404.1527(c). 561 F.3d 646, 651 (6th Cir. 2009).

Plaintiff similarly criticized the ALJ's evaluation of the opinion of Dr. Reddy, her treating pain management specialist, as "insufficiently specific" (doc. 8 at 12). The Magistrate Judge quoted extensively from the ALJ's determination, however, and construed it instead to be "quite specific and detailed" (see doc. 15 at 12). In an addendum (added five days later) to a letter dated March 21, 2009, Dr. Reddy stated that it was "[his] medical opinion that [Plaintiff] is not able to work at this time or in the foreseeable future" (Tr. 462). Dr. Reddy also termed Plaintiff to be "unemployable" on a Basic Medical form for the Ohio Department of Jobs and Services completed August 3, 2009 (Tr. 536). Moreover, he recorded multiple functional limitations, among them an ability to lift and/or carry no more than five pounds at a time, sit no more than one

4

hour at a time for a total of four-to-six hours in an eight-hour workday, and stand and/or walk no more than 15 minutes at a time for a total of less than one hour in an eight-hour workday, and also indicated that Plaintiff was "markedly" to "extremely" limited in her ability to push/pull, bend, reach, handle, and perform repetitive foot movements (id.). The Magistrate Judge noted, though, that the ALJ accurately commented that Dr. Reddy's various treatment notes did not support many of the limitations on which he opined, including Plaintiff's ability to lift and/or carry or to use her hands (see doc. 15 at 12-13). For example, at her initial visit on September 18, 2008, he recorded a "normal" gait despite her using a walker (and claiming to be approved for a wheelchair and scooter), negative straight leg testing regarding her lumbar spine physical exam with only "questionably" positive axial compression and Spurling's tests, and a preserved cervical spine range of motion (Tr. 426, 461). Dr. Reddy also remarked that Plaintiff exhibited "exaggerated pain behaviors" (Tr. 461) and that she had been noncompliant with prescribed physical medicine treatments with respect to her neck, bilateral upper extremities, right knee and lumbar spine (Tr. 462). The ALJ additionally referenced Plaintiff's report to Dr. Reddy that her pain was somewhat controlled (5-6 on a scale of 1-10) by her medication regimen (Tr. 460), as well as certain inconsistencies

5

between what Plaintiff told Dr. Reddy versus her other physicians, particularly surrounding her attempts to obtain pain medication (Tr. 223, 422, 483, 861-62, 864) and about her purported lack of ability to drive herself (cf. Tr. 462 with Tr. 803, 807). Regarding Plaintiff's assertion that the ALJ impermissibly "played doctor," the Magistrate Judge remarked that highlighting inconsistencies between non-interpretive objective evidence, a physician's own clinical records and that same physician's opinions about a patient's functional capacity is precisely the role an ALJ must sometimes assume (see doc. 15 at 13).

The Magistrate Judge considered next whether the ALJ in fact gave "deferential weight" to the opinion of Dr. Wells (see Tr. 26), who performed arthroscopic surgery, with a partial lateral meniscectomy, on Plaintiff's right knee on May 21, 2008 (see Tr. 283-85). (See doc. 15 at 13-16.) The ALJ referenced Dr. Wells' post-operative progress note on the following July 10 that "he administered the first in a series of Synvisc injections" to treat the "effusion and limited range of motion" he detected (Tr. 23, citing Tr. 274), as well as his opinion that date that Plaintiff was "unable to engage in 'prolonged' periods of 'standing, walking, etc.'" (Tr. 26, citing Tr. 274). The ALJ observed that Plaintiff informed Dr. Wells on December 16, 2008 that these injections provided "good [pain] relief" and

6

asked for more (Tr. 23, citing Tr. 482). The ALJ also referenced the notes of Dr. Wells' March 19, 2009 examination that "showed normal range of motion, although with pain and tenderness, and otherwise revealed no significant effusion, warmth, or edema" (Tr. 23, citing Tr. 480), and observed that his opinion that date regarding Plaintiff's limitations was consistent with the one rendered the previous July (Tr. 26, citing Tr. 457). Plaintiff urged that the ALJ's failure to incorporate the standing or walking limitations referenced by Dr. Wells into a functional capacity assessment undermined the purported deference he gave to this treating physician. The Magistrate Judge reasoned that any error from such an omission was harmless inasmuch as the ALJ concluded that Plaintiff remained capable of performing her past relevant work as a collections agent and as a secretary, jobs that both primarily involve sitting. In other words, the additional restrictions attendant to the opinion of Dr. Wells that Plaintiff could not stand or walk for "prolonged" periods of time would not have eliminated the work the ALJ determined she still could perform. (See doc. 15 at 15-16.)

Lastly, the Magistrate Judge addressed the ALJ's assessment of the opinion of Plaintiff's treating psychiatrist, Dr. Alkhawaga. In March 2008, Dr. Alkhawaga initially diagnosed Plaintiff with Major Depression, with a prognosis of "fair[,]"

7

but "expected to improve with treatment" (Tr. 17, quoting Tr. 458). As treatment began, therapist Jack Adkins diagnosed her with a major depressive disorder, recurrent and moderate, with a Global Assessment of Functioning (GAF) score of 55, indicative of moderate symptoms. On April 10, 2008, however, Dr. Alkhawaga had arrived at a score of 60 (the highest score with which an individual can still be considered to have "moderate" difficulty) and recorded Plaintiff's concentration and memory, recent and remote memory, judgment and insight, and concentration recall all to be "fair"; her affect was "full-ranged"; and she exhibited "average" intellectual functioning, "full" orientation, and "normal" thought processes. He noted she was "preoccupied with her health issues" and prescribed Cymbalta and Trazadone. (Tr. 17, citing Tr. 298-302.) The ALJ surveyed Dr. Alkhawaga's findings through November 2010. In June 2008, April 2009 and June 2009, Plaintiff exhibited a "full-ranged" affect and she appeared only "mildly" depressed (Tr. 17, citing Tr. 308, 572, 579). On August 19, 2009, he noted that she was only "mildly anxious" and overall "stable at baseline" (Tr. 17 (Tr. 565, 566)). She also summarized Mr. Adkins' therapy notes, which recorded Plaintiff as exhibiting "no more than a depressed mood"; indeed, on May 21, 2009, her therapist noted his impression that Plaintiff "d[id] not seem anxious at all but claim[ed] otherwise" (Tr. 18, citing Tr. 574

8

and 812 (client "presents with no anxiety today [05/27/2010]"). And, on September 2, 2010 Plaintiff reported feeling "happier" because she had begun dating a man who lived south of Columbus (Tr. 18, citing Tr. 803). The ALJ also noted with great emphasis Mr. Adkins' entry during their March 13, 2009 appointment that Plaintiff was upset with Dr. Alkhawaga, because he apparently told her that her mental "status" was not of the "nature" to receive "this type of disability" (Tr. 17-18, citing Tr. 583, 585). The Magistrate Judge indicated that, in addition to these treatment and therapy notes, the ALJ made reference to multiple recordings of "normal" mental status during physical examinations in March 2008 by Dr. Uzpen and during the period September 2008 through December 2009 by Dr. Reddy and other primary care physicians at Wright-Patterson (Tr. 18, citing Tr. 333, 344, 617, 672, 680, 710, 759, 871).

   Dr. Alkhawaga completed a "Mental Impairment Questionnaire" on February 8, 2010 (Tr. 609-11). In it, he opined that Plaintiff was likely to miss work "more than three times a month" because of her impairments and treatment therefor (Tr. 611). The ALJ gave "little weight" to this opinion (see Tr. 18) inasmuch as Dr. Alkhawaga also opined that Plaintiff experienced only moderate restrictions of daily activities, moderate deficiencies of concentration, persistence or pace, and was only slightly limited in social functioning (Tr. 611). Counsel

9

identified certain clinical records that noted that Plaintiff came to her appointments "tearful" with a "depressed mood," urging these were supportive of Dr. Alhawaga's absence-from-work estimate. But the Magistrate Judge rejected that inference, reasoning instead that, "[o]ne can exhibit a tearful and depressed mood at mental health appointments without being wholly disabled from all work" (doc. 15 at 18). The Magistrate Judge referred again Dr. Alkhawaga's "unequivocal" statement to Plaintiff in March 2009 that she did not have "any" psychiatric limitations rendering her eligible for disability, obviously inconsistent with his opinion that she would be frequently absent (id.). Finally, the Magistrate Judge dismissed Plaintiff's contention that the ALJ was "playing doctor" in giving "little weight" to Dr. Alkhawaga's opinion in light of his consistent assessment of Plaintiff's symptoms as "moderate," beginning with her GAF score in April 2008 and continuing with his treatment notes that recorded symptoms that were "stable" all the way through to November 2010, a time band that plainly encompasses the period that would have informed the questionnaire under scrutiny (id.). Substantial evidence, therefore, supported the ALJ's rejection of Dr. Alkhawaga's "most limiting opinions" (id. at 19).

The second error evaluated by the Magistrate Judge was whether the ALJ improperly assigned "great weight" to the

10

residual functional capacity assessments of State agency reviewing physicians, in particular non-examining physician Dr. Bolz (id. at 19-20). His physical assessment, completed on January 11, 2009 (Tr. 449-456), was affirmed by Dr. W. Jerry McCloud on June 2, 2009 (Tr. 479). At the outset, the Magistrate Judge noted that, under proper circumstances, the opinion of a non-examining agency physician may be entitled to greater weight than that of a treating or examining physician, citing 20 C.F.R. § 404.1527(e); Soc. Sec. Ruling 96-6P, 1996 WL 374180, at *3 (July 2, 1996) (see doc. 15 at 19). Thus, the mere fact that the ALJ gave greater weight to consulting, as opposed to treating, sources does not require reversal. Continuing, she noted that the ALJ's RFC assessment of Plaintiff derived largely from the opinion of Dr. Bolz, who determined that Plaintiff was physically capable of work consistent with the "light" exertional level (see Tr. 25). In particular, he opined that she could "stand and/or walk, as well as sit, no more than six hours in an eight-hour workday[,]" but could "never climb ladders, ropes or scaffolds" and could "only occasionally kneel, crawl, or climb ramps or stairs[]" (Tr. 25, citing Tr. 450, 451). Further, he stated that Plaintiff could "perform bilateral fingering no more than frequently" (Tr. 450, 451, 452). The ALJ included all the restrictions outlined by Dr. Bolz in Plaintiff's RFC save for the limitation that she

11

could only "occasionally" climb ramps or stairs and "never" climb ladders, ropes, or scaffolds (see Tr. 20). Plaintiff argued that this omission was reversible error, but the Magistrate Judge was not persuaded. She found no evidence in the record that either of Plaintiff's prior jobs, of which she was found capable of still performing, would ever involve any climbing. Thus, the ALJ's error was harmless on the facts presented. (Doc. 15 at 20.)

Plaintiff lodges four objections[1] to the Magistrate Judge's recommendation that Defendant's decision be affirmed. First, she believes the Magistrate Judge should have determined that the ALJ failed to provide specific, supported reasons for denying the opinion of Dr. Reddy deferential, if not controlling, weight. Second, she asserts that the Magistrate Judge should have concluded that the ALJ's error with regard to the opinion of Dr. Wells was not harmless. Third, she urges that the Magistrate Judge should not have found Dr. Alkhawaga's opinion to be inconsistent with his functional capacity assessment. And finally, Plaintiff posits that, because the ALJ failed to properly credit the treating source evidence in the record, the Magistrate Judge, in turn, should have found the

---

[1] Plaintiff does not contest that portion of the Magistrate Judge's Report regarding the ALJ's determination to not give "controlling weight" to the opinion of treating physician Dr. Uzpen.

12

ALJ's assignment of greater weight to the opinion of the State agency consultant to be reversible error.

Plaintiff's objections with regard to the weight given to the opinions of Drs. Reddy, Wells and Bolz essentially repeat the arguments contained in her Statement of Errors already considered by the Magistrate Judge (see doc. 8). Regarding the weight given to the opinion of Dr. Alkhawaga, Plaintiff takes issue with the Magistrate Judge's "quip" that "[o]ne can exhibit a tearful and depressed mood at mental health appointments without being wholly disabled from all work" (doc. 16 at 6, quoting doc. 15 at 18). Plaintiff maintains that an individual who "consistently" presents in this state during treatment appointments "is reasonably more likely to be absent from work in a manner consistent with the portion of Dr. Alkhawaga's opinion which is at issue here" (doc. 16 at 6).

The number of absences Plaintiff is likely to experience on a monthly basis obviously is germane to whether she can perform her past relevant work. The testimony of the Vocational Expert ("VE") at the December 16, 2010 hearing was not explicitly precise on how many days would be tolerated by an employer. The VE stated that, for unskilled work, typically one absence every six weeks would be permissible (Tr. 50). Plaintiff's work was skilled, however, and she accrued a variety of different types of leave that, again typically, she would be able to take as

13

needed (id.). In any event, it appears that the parties agree that more than three absences a month would be unacceptable and therefore preclude Plaintiff from working as either a collections agent or as a secretary. Hence, whether to credit this aspect of Dr. Alkhawaga's opinion does matter. Counsel claims that Plaintiff "consistently" presented in this manner at her appointments, yet the Court cannot verify any such regular pattern. Moreover, Plaintiff cites no legal authority in support of her position that a "tearful" and "depressed mood" when engaging in therapy equates to a propensity for absenteeism and the Court does not find such an association to be axiomatic. Plaintiff urges that a "stable" mental health condition is not inconsistent with Dr. Alkhawaga's prediction of absence. The Court appreciates that a "stable" condition is appropriately regarded as an "unchanging" condition. In this case, however, Dr. Alkhawaga told Plaintiff directly in March 2009 that her depression was not severe enough to be disabling (see Tr. 583, 585). Thus, the Court interprets a lack of change in Plaintiff's condition to be indicative of a continuing state of non-disabling depression, inconsistent with such an extreme estimate of absenteeism.

As required by 29 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), the Court has reviewed the findings of the Magistrate Judge and considered de novo the filings in this matter. Upon

14

careful consideration, we find Plaintiff's objections unpersuasive. Accordingly, the Court ACCEPTS, ADOPTS and AFFIRMS the recommendation of the Magistrate Judge. Thus, the decisions of the Commissioner to deny Plaintiff's applications for disability insurance benefits and disabled widow's benefits, which we find to be supported by substantial evidence, are AFFIRMED and the Court ORDERS that this case be closed.

    SO ORDERED.


Dated:  April 1, 2014    s/S. Arthur Spiegel_____
                                  S. Arthur Spiegel
                                  United States Senior District Judge